United States District Court
Southern District of Texas
**ENTERED**
November 20, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| EDMUNDO CASTILLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Case No. 7:25-CV-00252 |
| | § | |
| CVS PHARMACY, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

From 2022 to 2024, Plaintiff Edmund Castillo was a pharmacy technician at a CVS Pharmacy, Inc. ("CVS") store in the Edinburg area. During that time, he was diagnosed with Level 1 Autism Spectrum Disorder ("ASD"). Castillo alleges that when he informed CVS of this diagnosis, CVS began to discriminate against him. He claims that his hours were cut and that he was subjected to a hostile-work environment. Despite Castillo's attempts to resolve his disputes with CVS, the discrimination continued. Rather than continue to face the alleged hostile-work environment, Castillo resigned from his position at CVS and brought this lawsuit under the Americans with Disabilities Act ("ADA").

Before the Court is CVS's Motion to Compel Arbitration and Stay Litigation. (Dkt. No. 10). Castillo has not filed a response. For the following reasons, the Court **GRANTS** CVS's Motion to Compel Arbitration and Stay Litigation. (*Id.*).

**I.     BACKGROUND**[1]

    **A.     CASTILLO'S EMPLOYMENT**

In September 2022, Castillo was hired as a pharmacy technician at a CVS store in Edinburg, Texas. (Dkt. No. 1 at 2). In that position, Castillo worked under the supervision of CVS pharmacy management and the regional pharmacy district leader. (*Id.*). Castillo has been diagnosed with Level 1 ASD. (*Id.* at 2–3). Despite this diagnosis, Castillo alleges that he was fully capable of performing his job functions without any accommodation. (*Id.* at 3).

After disclosing the diagnosis to his direct supervisor in November 2022, Castillo claims he began to suffer discrimination. (*Id.*). Prior to November 2022, Castillo was scheduled to work an average of 30–40 hours a week. (*Id.*). After, Castillo's hours were reduced to 0–5 hours a week. (*Id.*). Less experienced employees were also given full-time schedules during this period. (*Id.*).

Castillo requested reinstatement of his regular hours and fair shift assignments. (*Id.*). CVS refused and declined to engage in the "interactive process as required by law." (*Id.*). Following these requests Castillo was subjected to a hostile-work environment. (*Id.*). This hostile-work environment included ridicule by coworkers, accusations of insubordination for asking questions, and unjustified disciplinary action. (*Id.*). Castillo filed a formal complaint with CVS's Human Resources department in March 2023. (*Id.*).

---

    [1]    A motion to compel arbitration is generally treated as a motion to dismiss. *Vine v. PLS Fin. Servs., Inc.*, 689 F.App'x 800, 802 (5th Cir. 2017) (citing *Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc.*, 468 F.3d 523, 525 (8th Cir. 2006)). Accordingly, the Court accepts Plaintiff's well-pleaded facts related to the underlying dispute as true. *Vine*, 689 F.App'x at 802.

When this failed to resolve Castillo's complaint and the hostile work environment, Castillo resigned from his position on March 24, 2024. (*Id.*).

### B. THE ARBITRATION AGREEMENT

Before beginning his job with CVS, Castillo executed a written CVS Health Arbitration Agreement (the "Agreement"). (Dkt. No. 10-1 at 7–8). The Agreement provides:

> **Mutual Agreement to Arbitrate Claims:** Under this Agreement, [Castillo] and CVS agree that any dispute between [Castillo] and CVS that is covered by this Agreement ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Agreement.

(*Id.* at 7). The Agreement goes on to explain the claims are subject to arbitration:

> **Claims Covered by this Agreement:** Except as otherwise stated in this Agreement, Covered Claims are any and all claims, disputes or controversies . . . that [Castillo] may have, now or in the future, against CVS . . . arising out of or related to [Castillo's] employment with CVS or the termination of [Castillo's] employment. Covered Claims include but are not limited to disputes regarding . . . hours of work, . . . harassment, discrimination, retaliation and termination arising under the . . . Americans with Disabilities Act.

(*Id.*).

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). "They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Id.* (citations omitted). Under the Federal Arbitration Act ("FAA"),

the jurisdiction of federal courts is limited when parties have agreed in writing to arbitrate. *See* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

An arbitration agreement's enforcement involves two steps. *Kubala v. Supreme Prod. Services, Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). First, a court must determine whether the parties entered into an agreement to arbitrate the dispute. *Id.* Second, a court must determine whether the parties' dispute falls within the scope of the arbitration agreement. *Id.*; *see also Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

In the first step, the party moving to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F.App'x 310, 315 (5th Cir. 2012). In determining whether parties agreed to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). Once "competent evidence showing the formation of an agreement to arbitrate has been presented," the party resisting arbitration must "produce *some* contrary evidence to put the matter 'in issue.'" *Gallagher v. Vokey*, 860 F.App'x 354, 358 (5th Cir. 2021) (quoting 9 U.S.C. § 4) (emphasis in original). To put the arbitration agreement "in issue," 9 U.S.C. § 4, the resisting party must (1) unequivocally deny that he agreed to arbitrate and (2) produce some evidence to support this assertion, *Gallagher*, 860 F.App'x at 357.

In the second step, courts adhere to principles of contract interpretation and "look[] to the arbitration clause itself" to determine whether the parties' dispute falls within the scope of the arbitration agreement. *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins.*, 921 F.3d 522, 531 (5th Cir. 2019).

"When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475–76, 144 S.Ct. 1173, 1176, 218 L.Ed.2d 494 (2024).

## III. DISCUSSION

CVS presents competent evidence showing the existence of an arbitration agreement, (Dkt. No. 10-1 at 7–8), carrying its burden to prove its existence by a preponderance of the evidence, *Grant*, 469 F.App'x at 315. Castillo did not respond to CVS's Motion, and in doing so, failed to unequivocally deny that he agreed to arbitrate or provide any evidence to the contrary. *Gallagher*, 860 F.App'x at 357–58. What's more, the Agreement encompasses nearly all disputes involving Campbell's employment or termination—a wide net that captures all of the asserted claims here. As such, the Court is required to compel arbitration, s*ee Halliburton*, 921 F.3d at 531, and stay the proceedings pending arbitration, *see Smith*, 601 U.S. at 475–76, 144 S.Ct. at 1176.

### A. MOTION TO COMPEL ARBITRATION

CVS has carried its burden to establish the existence of an agreement to arbitrate with Castillo. *See Grant*, 469 F.App'x at 315. Here, CVS offered several pieces of evidence to support the existence of an arbitration agreement with Castillo: (1) the CVS Health

5

Arbitration Agreement (the "Agreement") dated September 7, 2022, and signed by Castillo, (Dkt. No. 10-1 at 7–8); and (2) an uncontroverted affidavit by a custodian of records for CVS, (*id.* at 2–5); *see Gallagher*, 860 F.App'x at 358 ("[A]n uncontroverted affidavit, even when supplied by a party or a party's employee, can establish the existence of an agreement to arbitrate." (citing *Banks v. Mitsubishi Motors Credit of Am.*, 435 F.3d 538, 540–41 (5th Cir. 2005))).

Because "competent evidence showing the formation of an agreement to arbitrate has been presented," Castillo must "produce *some* contrary evidence to put the matter 'in issue.'" *Gallagher*, 860 F.App'x at 358 (quoting 9 U.S.C. § 4) (emphasis in original). To satisfy the some-evidence standard, Castillo must (1) unequivocally deny that he agreed to arbitrate and (2) produce some evidence to support this assertion. *Id.* at 357. Castillo has done neither. In fact, he has failed to respond at all. The Court finds that CVS has established that the parties entered into an agreement to arbitrate. *See Kubala*, 830 F.3d at 201.

Further, the dispute here falls within the scope of the arbitration agreement. The Agreement requires arbitration for essentially all claims arising out of an employee's employment or termination with CVS, including claims involving harassment and hours worked. (Dkt. No. 10-1 at 7). Castillo's employment-discrimination claim under the ADA concerns Castillo's employment at CVS and the harassment he alleges he suffered. (Dkt. No. 1 at 4–5). Thus, his claim falls squarely within the Agreement.[2] *See Gillon v.*

---

[2] Even if it were a closer call, any doubts about the scope of arbitrable issues should be resolved in favor of arbitration. *Klein v. Nabors Drilling USA LP*, 710 F.3d 234, 237 (5th Cir. 2013).

*UCB Inc.*, 757 F.Supp.3d 759, 765 (S.D. Tex. 2024).  Accordingly, the Court **GRANTS** CVS's Motion to Compel Arbitration.  (Dkt. No. 10).

### B.   MOTION TO STAY LITIGATION

Asserting that Castillo's ADA claim is subject to arbitration, CVS argues that this action should be stayed during arbitration.  (Dkt. No. 10 at 9).  "The FAA instructs courts to stay an action on application of one of the parties if the court determines that the parties have agreed to arbitrate a claim brought before it and the issue is in fact arbitrable."  *CMA CGM, S.A. v. GCC Supply & Trading LLC*, 793 F.Supp.3d 866, 882 (S.D. Tex. 2025) (citing 9 U.S.C. § 3); *see also Smith*, 601 U.S. at 478–79, 144 S.Ct. at 1178 (holding "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding").  The Court therefore **GRANTS** CVS's Motion to Stay Litigation.  (Dkt. No. 10).

## IV.   CONCLUSION

In short, the Court **GRANTS** Defendant's Motion to Compel Arbitration and Stay Litigation.  (Dkt. No. 10).  This Civil Action is **STAYED** and **ADMINISTRATIVELY CLOSED** without prejudice in favor of arbitral proceedings.  This action may be reopened upon a motion by any Party.  The Parties are **ORDERED** to file a joint status report informing the Court about the status in 180 days.

It is SO ORDERED.

Signed on November 20, 2025.

                                                          **DREW B. TIPTON**
                                       **UNITED STATES DISTRICT JUDGE**